IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

MASON W.,

        Plaintiff,

v.

ANDREW SAUL, Commissioner
of Social Security,[1]

        Defendant.

Civil Action No.
3:18-CV-1383 (DEP)

---

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF

GORTON LAW FIRM                PETER A. GORTON, ESQ.
1500 East Main St.
PO Box 89
Endicott, NY 13761-0089

FOR DEFENDANT

HON. GRANT C. JAQUITH         SIXTINA FERNANDEZ, ESQ.
United States Attorney for the     Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

---

[1] Plaintiff's complaint named Nancy A. Berryhill, as the Acting Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew Saul took office as Social Security Commissioner. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral argument was conducted in connection with those motions on December 11, 2019, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated: December 16, 2019
Syracuse, NY

```
 1                UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF NEW YORK

 3

 4   MASON W.,                        )
                                      )
 5              Plaintiff,            )    CASE NO. 3:18-CV-1383
                                      )
 6        vs.                         )
                                      )
 7   ANDREW SAUL,                     )
                                      )
 8              Defendant.            )
                                      )
 9

10           TRANSCRIPT OF TELEPHONIC PROCEEDINGS
              BEFORE THE HON. DAVID E. PEEBLES
11              WEDNESDAY, DECEMBER 11, 2019
                    SYRACUSE, NEW YORK
12

13   FOR THE PLAINTIFF:
         Lachman, Gorton Law Firm
14       By:  Peter A. Gorton, Esq.
         1500 East Main Street, PO Box 89
15       Endicott, New York   13761-0089

16

17   FOR THE DEFENDANT:
         Social Security Administration
18       Office of Regional General Counsel, Region II
         By:  Sixtina Fernandez, Esq.
19       26 Federal Plaza, Room 3904
         New York, New York   10278

20

21

22

23          THERESA J. CASAL, RPR, CRR, CSR
             Federal Official Court Reporter
24               445 Broadway, Room 509
                Albany, New York   12207
25


               THERESA J. CASAL, RPR, CRR
            UNITED STATES DISTRICT COURT - NDNY
```

1    THE COURT: All right. Thank you both for
2 excellent presentations. This was an interesting case, I
3 enjoyed working on it with you.
4    I have before me a request by the plaintiff for
5 judicial review of an adverse determination by the
6 Commissioner of Social Security pursuant to 42 United States
7 Code Sections 405(g) and 1383(c)(3).
8    The background is as follows: The plaintiff was
9 born in August of 1970 and is currently 49 years old. He
10 was 39 years of age at the alleged onset of his disability
11 on September 8, 2009, and 43 when he made application for
12 benefits in September of 2013. He stands between 5 foot 11
13 and 6 foot in height and weighs between 145 and 155 pounds.
14 He lives in a half-house in Binghamton, New York, with his
15 girlfriend, a nephew and niece-in-law and two young
16 children, who, at the time of the hearing in this matter,
17 were ages 1 and 4.
18    Plaintiff quit school in or after the eighth grade
19 but obtained a GED in 2000. Plaintiff has no driver's
20 license. He is right-handed. Plaintiff has not worked
21 since September of 2009 when he experienced a bike accident
22 when his bike hit a pothole. Past relevant work includes as
23 a cook, a cook prep and a dishwasher in a restaurant from
24 August of 2005 to September of 2009 and in 2003 in a
25 seasonal landscaping position. Plaintiff apparently was

1   incarcerated at some point until August of 2005.
2           Medically, plaintiff suffered a bike accident, as
3   I indicated, in September 2009, resulting in experiencing
4   pain and numbness into his legs and a situation that was
5   progressively worse and, according to him, produces daily
6   pain.
7           He has been diagnosed as having chronic DDD,
8   degenerative disk disease, in both cervical and lumbar L5/S1
9   regions of his spine. Plaintiff suffers from other
10  conditions but denied that he has any resulting limitations
11  that would affect his ability to perform work functions.
12          It was noted that plaintiff fell down the stairs
13  in 1995, that's at 234, and that that might have caused or
14  added to his back issues.
15          He has treated with Dr. Matthew Benett at Tier
16  Orthopedic Associates and at Lourdes Center for Family
17  Health beginning in September of 2008 with Family Nurse
18  Practitioner Brandy Benjamin, Physician's Assistant Paul
19  Hodgeman, H-O-D-G-E-M-A-N. He has been prescribed various
20  medications including Celobrex, Hydrocodone, Tramadol,
21  Gabapentin, Norflex injections, Flexeril, Cataflam and
22  Oxycodone. As counsel indicated, he had an emergency
23  department visit in May of 2016 with back pain and the
24  impression, at 568, concerning that visit was severe
25  degenerative disc disease at L5/S1.

Plaintiff has undergone several lumbar and cervical MRIs. In July of 2010, at page 284 and 285, the results showed central spinal stenosis due to broadbased disc herniation as well as encroachment of the neural foramen due to the bulging disc material in the right side grossly unaltered. L5/S1 level again shows a milder disc bulging in the central spinal canal but persistent right neural foraminal encroachment at this level as well. It also showed borderline congenital stenosis of the lumbar spinal canal diffusely, superimposed mild acquired stenosis of the canal at the L4/L5 level, moderate stenosis of the neural foramina bilaterally at the L4/L5 level and probable mild mass effect on both exiting nerve roots and moderate stenosis of the left neural foramen at L5/S1 with probable mild mass effect on the nerve root, mild to moderate right foraminal stenosis at L5/S1, but no evidence of a fracture. Mild retrolisthesis at L4/L5 and L5/S1.

Subsequent MRI testing on March 11, 2013, reflected multiple degenerative discs, at 249 and 250 of the administrative transcript. Also noted degenerative changes of the lumbar spine as described above and it's saliently at L5/S1. It was noted that there is prominent degeneration of the disc with generalized bulging of the annulus and a superimposed broad left lateral disc protrusion. The results found to be borderline congenital stenosis of the

lumbar spinal canal diffusely, superimposed mild acquired stenosis of the canal at the L4/L5 level, moderate stenoses of the neural foramina bilaterally at the L4/L5 level, with probable mild mass effect on both exiting nerve roots, moderate stenosis of the left neural foramen at L5/S1 with probable mild mass effect on the nerve root, mild to moderate right foraminal stenosis at L5/S1.  Again no evidence of fracture, and mild retrolisthesis at L4/L5 and L5/S1.

There was an additional lumbar MRI testing on December 24, 2004, at pages 290 and 291, the results showing, among other things, circumferential disc bulge and additional left paracentral posterior disc protrusion at L5/S1 results in effacement of the left lateral recess and narrowing of the neural foramina, greater on the left.  It also shows circumferential disc bulge and broadbased posterior disc protrusion at L4/L5 resulting in bilateral ventral effacement of the lateral recesses and mild to moderate central spinal canal stenosis, as well as mild to moderate narrowing of the neural foramina.

Testing on June 25, 2014, of plaintiff's cervical spine resulted, at 290, with a finding of spondylosis changes most prominent at C4/C5 but no evidence of fracture.

The plaintiff's activities of daily living include some cooking, shopping with help, no laundry, showering,

1   dressing, child care, watching television, listening to the
2   radio and enjoying art.
3       Plaintiff is a smoker, he smokes one pack per day,
4   that's at 330, 572, 630 and 238 of the administrative
5   transcript.
6       Procedurally, plaintiff applied for Title XVI
7   Supplemental Security Income payments protectively on
8   September 6, 2013, alleging an onset date of September 8,
9   2009.  He claimed disability due to chronic back pain with
10  radiculopathy symptoms, degenerative disc disease, thoracic
11  spondylosis and T11 compression fracture, that's at 172.
12      Can I interrupt?  Mr. Gorton, you're breathing a
13  little heavily and you're making me cut out, I think, for
14  the court reporter.
15      MR. GORTON:  Okay.  I'll move away.
16      THE COURT:  Hold your breath.  On November 17,
17  2015, a hearing was conducted by Administrative Law Judge
18  Elizabeth W. Koennecke, K-O-E-N-N-E-C-K-E.  Judge Koennecke
19  issued a decision on December 4, 2015, that was unfavorable
20  to the plaintiff.  The Social Security Administration
21  appeals counsel denied plaintiff's request for a review on
22  March 27, 2017.
23      After a proceeding was commenced in this court by
24  the plaintiff, the matter was remanded on consent to the
25  agency on October 2, 2017.  That was followed by Social

*Mason W. v. Saul - 18-CV-1383*

1    Security Administration appeals counsel remand order issued
2    on December 19, 2017, making certain observations and giving
3    instructions to the Administrative Law Judge.
4         A second hearing was conducted on August 15, 2018,
5    and a decision was issued on September 21, 2018, again by
6    Administrative Law Judge Koennecke, concluding that
7    plaintiff was not disabled at the relevant times.
8         In her decision, Administrative Law Judge
9    Koennecke applied the five step familiar test for
10   determining disability.  She concluded at Step One that
11   plaintiff had not engaged in substantial gainful activities
12   since the date of his application.
13        At Step Two, she concluded that plaintiff suffered
14   from severe impairment that imposed more than minimal
15   effects on the limitations on his capability to perform
16   basic work activities, including degenerative disc disease
17   of the cervical and lumbar spine.
18        At Step Three she concluded, however, that these
19   conditions did not meet or medically equal any of the listed
20   presumptively disabling conditions set forth in the
21   Commissioner's regulations, specifically considering listing
22   1.04.
23        She next surveyed the medical evidence and
24   concluded that notwithstanding his condition, plaintiff
25   has Residual Functional Capacity, or RFC, to lift or carry

20 pounds occasionally and 10 pounds frequently, sit six hours in an eight-hour day, stand and/or walk six hours in an eight-hour day, occasional stoop but never crawl. She further provided that he requires a job that permits him the ability to change positions approximately every hour for a brief stretch break while remaining on task.

Applying that RFC, ALJ Koennecke concluded that plaintiff is unable to perform his past relevant work. She did conclude, however, based on the testimony of a vocational expert and after noting that if plaintiff was able to perform a full range of light work, Rule 202.20 of the Medical Vocational Guidelines of the Commissioner, or the grid, direct the finding of no disability. She concluded that plaintiff is capable of performing work in the national economy as a marker, a router and a garment sorter and noted that that was a representative sampling of jobs that would be available to the plaintiff to perform based on his RFC.

As you know, the standard that I must apply is extremely deferential and requires me to determine whether correct legal principles were applied and the determination is supported by substantial evidence, which is defined as such evidence as a reasonable mind might accept as adequate to support a conclusion.

It was noted by the Second Circuit Court of

1  Appeals in *Brault versus the Social Security Administration*,
2  683 F.3d 443, at 448, that's the pincite, a case from the
3  Second Circuit in 2012, that "the substantial evidence
4  standard means once an ALJ finds facts, we can reject those
5  facts only if a reasonable factfinder would have to
6  concludes otherwise."
7       In this case, the issues raised by the plaintiff
8  as articulated in both his brief and oral argument are
9  several. The Residual Functional Capacity is not supported
10 by competent evidence; the challenges to the RFC
11 determination with regard to walking, standing, sitting,
12 lifting, carrying and squatting, as well as the requirement
13 of changing positions more frequently and every hour.
14 Relatedly, the plaintiff argues that the Administrative Law
15 Judge substituted her lay opinion for contrary and
16 uncontradicted medical opinions.
17      He raises a due process argument based on
18 ALJ Koennecke's comments concerning her prior experience
19 with Dr. Wiesner, W-I-E-S-N-E-R. There is an error assigned
20 regarding the limited weight given to Dr. Magurno's
21 consultative examination results after granting significant
22 weight to that opinion in her earlier decision. He argues
23 that the sit/stand for one hour finding is unsupported,
24 again arguing that it should be more frequently.
25      The attendance and on task opinions are also

1 challenged and, of course, the Step Five determination,
2 which hinges on whether or not the Residual Functional
3 Capacity is supported by substantial evidence.
4     In this case, the -- again, the issues regarding
5 RFC include sit, stand and walk, changing positions and off
6 task and absences. The focus of plaintiff's argument is on
7 the sit, stand and walk.
8     In Exhibit 2F, Dr. Wiesner noted that plaintiff,
9 on July 26, 2013, has significant limitations in lifting,
10 carrying, sitting and standing. In 7F, Dr. Wiesner, on
11 July 26, 2014 -- it looks like 2014, it's a little difficult
12 to read -- opined that plaintiff can sit, stand and walk for
13 less than two hours, requires a sit/stand option with a
14 change in positions every ten minutes, would be -- predicted
15 to be absent three times per month, has marked limitation on
16 ability to sustain work pace.
17     At 5F Dr. Magurno, the consultative examiner
18 retained by the Commissioner, on November 18, 2013, opined
19 that plaintiff has marked limitations in walking, standing
20 and sitting, among others. Nurse Practitioner Brandy
21 Benjamin, on June 14, 2018, at 17F, noted that plaintiff
22 would be off task more than 33 percent and absent more than
23 four times per month and noted that plaintiff can sit for
24 only four hours, walk for one hour and must change positions
25 every 15 minutes.

1    Plaintiff, in his testimony, indicated that he has
2 to stand -- he can only stand 15 minutes before he's
3 required to change positions, that's at page 44, and that
4 he can stand 30 minutes at a time, that's at 186, and sit
5 20 minutes before he has to change positions, that's at 187.
6 The Residual Functional Capacity, obviously, is grossly
7 different than all of these unanimous opinions, finding that
8 plaintiff can sit, stand and walk for six hours and must
9 change positions only every hour.
10   Medical opinions are subject to evaluation
11 pursuant to 20 CFR Section 416.927. The factors there are
12 outlined in that regulation as to how they're to be
13 construed. Agreed that there is no requirement that the ALJ
14 had to accept the consultative opinion of Dr. Magurno,
15 *Pellam versus Astrue*, 508 F.App'x 87, Second Circuit, 2013.
16 However, it's clear the ALJ cannot pit his or her expertise
17 against medical opinions and that an ALJ is not qualified to
18 assess limitations based on medical records.
19   It's well established, at least in this Circuit,
20 including *Balsamo* -- and I have the cite at my fingertips --
21 *against Chater*; *Sheri S. versus Berryhill*, which is a
22 decision from this court, in 2019, found at 2019 WL 1429522.
23 It is from Magistrate Judge Stewart, on March 29, 2019,
24 where he indicated, citing *Greek versus Colvin*,
25 802 Fed 3d 370, that an ALJ is not permitted to substitute

1 her own expertise or a view of the medical proof for a
2 treating physician's opinion or any competent medical
3 opinion. It is undoubtedly true that an Administrative Law
4 Judge is free to resolve issues and weigh competing medical
5 opinions, and it's also true that in limited situations
6 where impairments are relatively simple and mild, an ALJ may
7 be able to render a common sense judgment about functional
8 capacity even without a physician's assistance. I'm sorry,
9 without a physician's assessment.
10          In this case, there is, like there was in
11 *Sheri S.*, a significant, what I would consider a relatively
12 high degree, of impairment. The medical evidence, including
13 the MRI results that I read earlier, are significant and
14 complicated and do not present the type of simple case
15 that is contemplated in that limited line of cases. So we
16 fall into the category where evidence must be overwhelming
17 to overcome uncontradicted medical opinions. And there
18 were a couple of cases cited by the plaintiff, including
19 *Mcbrayer versus Secretary of Health and Human Services*,
20 712 F.2d 795, which goes to that proposition, and also
21 *Giddings versus Astrue*, 333 F.App'x. 649 and cite to
22 *Balsamo* -- I lost it again -- *Balsamo versus Chater*, by the
23 way, is 142 F.3d 75.
24          So, in this case, I might agree that the ALJ's
25 rejection of the opinions regarding being off task and

absenteeism are speculative, there isn't anything that really correlates what he experiences with why he might be absent, and so I think based on a couple of cases that have been cited, including *Smith v. Berryhill*, 740 F.App'x. 721, from the Second Circuit, 2018, it was proper to reject that. Also *Kenneth S. versus Commissioner of Social Security*, 2019 WL 1332317, from this court, Mr. Gorton's case, I believe, from 2019. And I note that Dr. Magurno didn't observe any limitations in the ability to perform, in terms of workdays and absenteeism, at 232. The problem I have is the sit, stand and walk. Dr. Magurno cited marked limitations.

      The Social Security appeals counsel, at page 482, was critical of the Administrative Law Judge's first decision for not explaining how she reached her conclusions. The change of position was also problematic. Dr. Magurno's decision is silent on that, but plaintiff's testimony, Dr. Wiesner's opinions, Nurse Practitioner Benjamin all suggest that a change is required every 10 to 15 minutes. All three positions that were identified by the vocational expert are in the light work category, which requires a great deal of walking and standing, that's at 20 CFR Section 404.1567(a), and so the error, I find, is significant.

      I do reject the due process argument. It would be helpful if Administrative Law Judges wouldn't use the type

*Mason W. v. Saul - 18-CV-1383*

1  of -- paint with the type of broadbrush that she apparently
2  did with regard to Dr. Wiesner's opinions, but she did also
3  provide other reasons for discounting Dr. Wiesner's opinion.
4  But -- and I also agree with the plaintiff that the
5  difference by Judge Koennecke, the same exact Administrative
6  Law Judge, in the treatment of Dr. Magurno's opinions, which
7  were given significant weight in decision number one, at
8  page 16, but limited weight in number two, page 425, exposes
9  a measure of arbitrariness.
10           So I conclude that the Administrative Law Judge
11 did not properly formulate the Residual Functional Capacity
12 and did not properly substitute her judgment for the
13 uncontradicted determinations of medical personnel when it
14 came to sitting, standing and walking, as well as a need to
15 change positions.  The Commissioner, therefore, did not
16 carry his burden at Step Five, because the hypothetical
17 posed to the vocational expert was based upon a faulty
18 Residual Functional Capacity determination.
19           Much as I would like to send this case back with a
20 directed finding of disability in light of the age of the
21 case, I'm not prepared to do that at this time.  I still am
22 not convinced that there is such persuasive evidence of
23 disability that a directed finding is required.  So I will
24 return the matter to the Commissioner for further
25 proceedings consistent with this opinion.

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*

1     Thank you all, and I hope you have happy holidays.
2         MS. FERNANDEZ: Thank you, your Honor.
3         MR. GORTON: Thank you, your Honor.
4             (This matter adjourned at 2:38 PM.)
5                 - - - - -
6
7         CERTIFICATION OF OFFICIAL REPORTER
8
9
10        I, THERESA J. CASAL, RPR, CRR, CSR, Official
11    Realtime Court Reporter, in and for the United States
12    District Court for the Northern District of New York, do
13    hereby certify that pursuant to Section 753, Title 28,
14    United States Code, that the foregoing is a true and correct
15    transcript of the stenographically reported proceedings held
16    in the above-entitled matter and that the transcript page
17    format is in conformance with the regulations of the
18    Judicial Conference of the United States.
19
20        Dated this 12th day of December, 2019.
21
22        **/s/ THERESA J. CASAL**
23        THERESA J. CASAL, RPR, CRR, CSR
24        FEDERAL OFFICIAL COURT REPORTER
25

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*